CASE 38—INDICTMENT—May 26.

## Lewis v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. To REDUCE A KILLING FROM MURDER TO MANSLAUGHTER the provocation must be such as is ordinarily calculated to excite the passions beyond control; and upon a trial for murder the jury should be so instructed, provided the evidence is such as to authorize an instruction as to manslaughter.    But it was not improper in this case to instruct the jury that there must have been a *considerable* provocation in order to authorize them to find the defendant guilty of manslaughter and not of murder.

2. A NEW TRIAL WILL NOT BE GRANTED upon the ground of newly discovered evidence in the absence of any excuse for the failure to produce the evidence upon the trial, or if the evidence is merely cumulative.

3. REVERSIBLE ERRORS.—The decision of the trial court upon a motion for a new trial is not subject to exception, and can not, therefore, be ground for reversal.

THOMAS L. MARTIN FOR APPELLANT.

1. The court erred in refusing a continuance upon the ground of newly discovered evidence.

2. The use of the words "considerable provocation," in the instruction to·

Lewis v. Commonwealth.

the jury, was misleading and prejudicial. (Payne v. Commonwealth, 1 Met., 371; Donnellan v. Commonwealth, 7 Bush. 677; Campbell v. Commonwealth, 88 Ky., 402.)

W. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

No provocation can render homicide justifiable, or even excusable. The least it can amount to is manslaughter. (Cottrell v. Commonwealth, MS. Op. Sept. Term, 1891.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

This appeal involves a human life. The accused, Nelson Lewis, met the deceased, George Dean, a boy about fifteen or sixteen years old, at a party. Some words passed between them, the character of which is not shown, when the deceased called the appellant "a chinch bug," and left him, going out of the room where they were into the yard and toward the door of another room of the house. The accused followed him, and just as he was about to enter the door, shot him, death resulting almost instantly. The appellant testified that, when he fired, the deceased was advancing upon him with a drawn razor. No other witness says so, however, and the statement is shown to be untrue beyond doubt. One witness says a razor was found at the feet of the deceased, but this testimony is not of a satisfactory character. The first person at the body testifies there was no razor there, and there is some evidence tending to create the belief that it was picked up in the house, where there were a good many persons. In any event it is not shown that the deceased had made any demonstration toward the appellant, or that he, at any time, had any weapon in his hands. When he was shot, he was going away from the accused, who shot him in the back of the head. Where there is any evidence tending

to show guilt, it is a question for the jury, and their finding will not be disturbed. To do so in this case would be a groundless and palpable invasion of the province of the jury, because the evidence fully sustains the verdict. It was evidently a wanton and needless killing, destitute of all circumstance of provocation sufficient to reduce it from murder to manslaughter.

Upon the motion for a new trial, the affidavit of one Southers was filed to the effect that the razor, found upon the premises where the killing occurred, belonged to the deceased. No excuse was given for the non-production of this evidence upon the trial; besides, it was merely cumulative, and not sufficient to authorize a new trial. It is said it was not so, because no testimony was introduced upon the trial to show the ownership. The material point, however, was to show that the deceased had the weapon when he was killed. Testimony to this end was introduced upon the trial. Evidence of his ownership merely tended to support this claim, and it was, therefore, only cumulative. Moreover, the decision of the trial court, upon a motion for a new trial, is not subject to exception, and can not, therefore, be ground for a reversal. (Crim. Code, section 281.)

The court instructed the jury upon the law as to murder, manslaughter, and the right of self-defense. It also gave the usual instruction as to the reasonable doubt. Complaint is made that the manslaughter instruction required the jury, in order to return a verdict for this offense, to find that the heat and passion was produced by "considerable provocation." The use of the words "legal provocation," in this connection in an instruction,

and without being defined, has been properly condemned. (Payne v. Commonwealth, 1 Met., 370; Donnellan v. Commonwealth, 7 Bush, 676.)

The jury in such a case are left to determine the law. It is said, however, that the use of the word "*considerable*" is misleading, and calculated to confuse the jury; that while one juryman might think a blow was necessary, another would believe that only an epithet was required; and that this word does not really define provocation.

Manslaughter is the killing of a human being in sudden heat and passion, and not in self-defense; and it is true there must be a considerable provocation. The text writers use this term. (Roscoe's Crim. Evidence, page 724; Wharton's Crim. Law, section 970.)

Every trivial provocation, although it may technically be an assault, as a slight jostle of one upon a crowded street without any circumstances of indignity, would not reduce what would otherwise be murder to manslaughter. (Cottrell v. Commonwealth, 13 Ky. Law Rep., 305.)

Upon the other hand, provocation sufficient to do so may arise, and exist without a blow or a trespass to the person. It may arise, although the offensive words may not be succeeded by an assault. It is not necessary that the person aggrieved shall be put in danger of losing his life, or of great bodily harm. If so, then it would be a killing in self-defense, and not a case of manslaughter. To reduce the killing from murder to manslaughter the person is not to be restricted to a state of case constituting an excuse for killing in self-defense. It is impossible to lay down a general rule which will apply to every case; and, as said in Campbell v. The Common-

wealth, 88 Ky. Reports, 402, citing the language of Bishop on Criminal Law, page 711, the true test is: "Whether the law deems the provocation calculated to excite the passions beyond control; if so, it reduces the offense from murder to manslaughter."

Ordinarily it is, perhaps, not best to use the word "considerable" in defining what constitutes legal provocation, or such prevocation as will reduce murder to manslaughter. There may be cases, however, in which it is not improper, and we are not prepared to say this was not one of them, conceding an instruction as to manslaughter should have been given. The use of the word did not leave the jury to determine the meaning of any technical legal term, but a matter of fact, to-wit: whether the provocation was considerable or trivial, and the jury should be credited with sufficient sense to understand the meaning of the term. As already said, however, it would have been better to have told them that the provocation must be such as was ordinarily calculated to excite the passions beyond control. This, however, seems to us to have been a case of murder, and, therefore, an instruction as to manslaughter, even if erroneous beyond question, could not avail. It is an unpleasant duty to affirm a death sentence, but feeling can not be consulted, and the protection of the living requires the enforcement of the law.

Judgment affirmed.